UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBIN E. SANDERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 2:18-CV-00023-SPM |
| | ) |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, denying the application of Plaintiff Robin E. Sanders ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 9). For the reasons set forth below, the decision of the Commissioner will be reversed and the case remanded for further proceedings consistent with this Memorandum and Order.

**I.    BACKGROUND**

On June 23, 2015, Plaintiff applied for DIB and SSI, alleging that she has been unable to work since April 9, 2015. (Tr. 15, 177-84). In her application, Plaintiff alleged that the following

---

[1]    After this case was filed, Andrew M. Saul ("Saul") was confirmed as the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

conditions limited her ability to work: anxiety, depression, fibromyalgia, chronic obstructive pulmonary disease ("COPD"), diabetes, migraines, nonalcoholic fatty liver disease, chronic pain, spasms, GERD, and hypothyroidism. (Tr. 208). Her application was initially denied on August 19, 2015. (Tr. 111-12). Following a hearing by an Administrative Law Judge ("ALJ"), the ALJ found Plaintiff was not under a "disability" as defined in the Act. (Tr. 15-27). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council, and on February 9, 2018, the Appeals Council declined to review the case. (Tr. 1-6). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

With regard to Plaintiff's testimony, work history, and medical records, the Court accepts the facts as provided by the parties in their respective statements of facts and responses. The Court will address specific facts related to the issues raised by Plaintiff as needed in the discussion below.

## II. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant

3

cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

### III. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, April 29, 2015; that Plaintiff has the severe impairments of fibromyalgia, somatoform disorder, pseudoseizures, headaches, diabetes mellitus type II, degenerative disc disease of the cervical and lumbar spine, anxiety disorder, depression, bipolar disorder, post-traumatic stress disorder, ("PTSD"), and mood disorder; and that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404[2], Subpart P, Appendix 1. (Tr. 15-18). The ALJ found that Plaintiff has the RFC to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(a), except that she can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; can occasionally balance; should avoid concentrated exposure to fumes, odors, dust, gases, and areas with poor ventilation; should avoid

---

[2]  Many Social Security regulations were amended effective March 27, 2017. Per 20 C.F.R. § 404.1527, the Court will use the regulations in effect at the time that this claim was filed.

4

even moderate exposure to work hazards such as unprotected heights and being around dangerous moving machinery; can understand, remember, and carry out simple instructions consistent with unskilled work; can tolerate occasional interaction with coworkers and supervisors, but only small numbers and for short periods of time; can handle no tandem tasks; can perform work that is done relatively independently, but no work completely alone; and can tolerate minimal, superficial interaction with the general public. (Tr. 20). The ALJ found that Plaintiff is unable to perform any of her past relevant work.[3] (Tr. 25). However, relying on the testimony of a vocational expert, the ALJ found that Plaintiff would be able to perform the occupations of office helper (Dictionary of Occupational Titles ("DOT") No. 239.567-010, 72,000 jobs in the national economy), mail clerk (DOT No. 209.687-026, 92,000 jobs in the national economy), and marker (DOT No. 209.587-034, 271,000 jobs in the national economy). (Tr. 26). The ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, from April 28, 2015, through the date of her decision. *Id*.

## IV. DISCUSSION

Plaintiff challenges the ALJ's decision, arguing that the ALJ erred by failing to find Plaintiff's diagnoses of osteoarthritis in both knees and her bulging disc with accompanying sciatic nerve pain to be medically determinable severe impairments at Step Two of her analysis. Plaintiff contends that the symptoms associated with these diagnoses would have affected the RFC assessment. Plaintiff also argues that the ALJ erroneously discounted the opinion of her treating physician, Sudhansu Kothary, M.D. The Commissioner argues that the ALJ did not err by failing to find Plaintiff's knee problems or bulging disc to be "severe." The Commissioner also argues that the ALJ properly considered and explained the weight given to the opinion evidence, and there

---

[3] Plaintiff's past relevant work included telemarketing customer service representative, child care assistant, kitchen worker, retail store manager, and hotel front desk clerk. (Tr. 108-09).

was substantial evidence in the record to support the RFC. Because the ALJ erred in failing to consider whether Plaintiff's osteoarthritis and bulging disc should be included among Plaintiff's severe impairments at Step Two of the analysis, the Court will only address that issue.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. Severe Impairments

Plaintiff argues that the ALJ erred at Step Two by failing to find that Plaintiff's osteoarthritis in her knees and her bulging disc were medically determinable and severe

impairments. (Doc. 20 at 3-4).

In the Commissioner's five-step sequential evaluation used to determine whether a claimant is disabled, at Step Two, the ALJ must determine whether the claimant has a "severe" impairment that lasted or is expected to last for at least twelve months. *See* 20 C.F.R. §§ 404.1509, 416.909. To show that an impairment is severe, a claimant must show that she has (1) a medically determinable impairment or combination of impairments, which (2) significantly limits her physical or mental ability to perform basic work activities, without regard to age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); 404.1521(a), 416.920(a)(4)(ii), (c); 416.921(a). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b), 416.922. While the requirement of severity is "not a toothless standard," neither is it an "onerous requirement." *Kirby*, 500 F.3d at 707. Additionally, though it is Plaintiff's burden to prove the existence of severe impairments, "the burden of a claimant at this stage of the analysis is not great." *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

The Eighth Circuit has held that an ALJ is only obligated to investigate a claim that is presented at the time of the application for benefits, or offered at the hearing as a basis for disability. *See Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (The ALJ is not obligated "to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.") (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)); *see also* 20 C.F.R. § 404.1512(a) ("We will consider only impairment(s) you say you have . . .").

Here, although Plaintiff failed to allege either condition in her application for benefits[4], at her hearing, she adequately brought to the ALJ's attention her knee problems and bulging disc/sciatic nerve pain. (Tr. 63-71). For example, when the ALJ asked her if she had any problems walking, she replied, "On an average day, yes. Walking hurts my knees." (Tr. 63). The ALJ then asked her how she gets around when she goes to a grocery store, and she answered that she could not walk, but had to ride on one of the carts typically provided by the store. *Id*. She went on to say that if she did try to walk, she experienced pain radiating down from her back to her left leg, and specified that the radiating pain was the result of her "bulging disc that's sitting on a nerve." Plaintiff testified that she was having "so much troubles with [her] knees," that her treating physician recommended that she consult with a rheumatologist about her condition. (Tr. 71). The ALJ asked what the rheumatologist told her, and Plaintiff testified that he "said I had multiple areas of osteoarthritis," including in both knees. (Tr. 66, 70-71). Plaintiff further testified that she used a cane, and had been using one for the last "four or five years." (Tr. 67).

Additionally, the medical record contains ample evidence that Plaintiff was diagnosed with osteoarthritis of both knees, and with a bulging disc that was causing sciatic nerve pain, both of which caused her pain and difficulty walking. For example, after complaining of knee pain, Plaintiff underwent x-rays of both legs, which showed bilateral knee osteoarthritis with medial compartment narrowing. (Tr. 943). Medical records from September and October 2016, indicate that Plaintiff had a disc bulge at L5-S1 that abutted her left S1 nerve root, as well as another disc bulge at C5-6 and C6-7. (Tr. 918-19, 933). Plaintiff was observed by her treating health professionals to be walking with a limp on numerous occasions. (Tr. 426, 430, 434, 438, 443, 451,

---

[4] In her application for benefits, Plaintiff listed the impairments that limited her ability to work as including anxiety, depression, fibromyalgia, chronic obstructive pulmonary disease ("COPD"), diabetes, migraines, nonalcoholic fatty liver disease, chronic pain, spasms, GERD, and hypothyroidism. (Tr. 208).

453). In April and May of 2015, Plaintiff reported to her physician that she was in "quite a lot of pain," which left her unable to stand for extended periods, and her doctor noted that Plaintiff "move[d] stiffly to the examination table." (Tr. 497, 516). Plaintiff had multiple positive straight leg raise tests, which frequently accompanies a bulging disc. (Tr. 692, 912, 978). Her physician noted that she appeared "obviously uncomfortable," and "exhibited paraspinal discomfort over the sacroiliac region and sciatica on her left side." (Tr. 978). Plaintiff reported having difficulty walking and standing due to her knee pain, and pain caused by the bulging disc. (Tr. 497, 911, 939, 977).

The Commissioner argues that even if the ALJ did err at Step Two in failing to find these particular impairments severe, such error does not require reversal because the ALJ fully considered Plaintiff's limitations related to her degenerative disc disease in her back and neck, as well as examinations showing diffuse tenderness, weakness, diminished sensation, loss of balance, and decreased neck, back, and shoulder range of motion. The Commissioner argues that Plaintiff's limitations attributable to her knee pain and bulging disc overlapped with the limitations attributable to the conditions that were considered by the ALJ. Accordingly, the Commissioner asserts that because the ALJ considered and formulated an RFC that contained limitations attributable to the same areas to which Plaintiff attributes her bulging disc and knee impairments, remand is not required. (Doc. 26 at 10). The Court disagrees.

Courts have held that an error at Step Two may be harmless if the ALJ nonetheless considered all of a claimant's impairments, severe and non-severe, in his or her subsequent analysis. *See Spainhour v. Astrue*, No. 11-1056-SSA-CV-W-MJW, 2012 WL 5362232, at *3 (W.D. Mo. Oct. 30, 2012) ("[E]ven if the ALJ erred in not finding plaintiff's shoulder injury and depression to be severe impairments at step 2, such error was harmless because the ALJ clearly

9

considered all of plaintiff's limitations severe and nonsevere in determining plaintiff's RFC."); *see also* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

Here, the Court is not able to evaluate whether the ALJ considered all of Plaintiff's limitations, including those related to her knee osteoarthritis or bulging disc, as her opinion contains not a single reference to either condition. The ALJ devoted a section of her opinion to discussing Plaintiff's multiple conditions that the ALJ found to be insufficiently "severe." (Tr. 18). The ALJ stated:

> The record also reflects the claimant has a number of ailments, which are either not sufficient, or established as an impairment, or are not shown to be severe functionally or durationally, or affect the claimant's ability to perform basic work activities. These ailments include gastroesophageal reflux disease, gastroparesis, irritable bowel syndrome, hypothyroidism, non-alcoholic fatty liver disease, hypertension, and dyslipidemia. Some of these ailments were quickly resolved with the use of short-term antibiotics, analgesics or over-the-counter remedies, while others were more chronic in nature, but were well treated and produced no significantly limiting symptoms. Accordingly, I find these ailments failed to establish a finding of severe impairment that would preclude work- related activities.

(Tr. 18).

It is significant that the ALJ did not include Plaintiff's knee osteoarthritis or bulging disc and related sciatic nerve pain in this summary. The ALJ was, of course, free to find that the evidence of record did not establish that Plaintiff's knee problems and bulging disc constituted severe impairments that significantly limited her physical ability to do basic work activities. However, the ALJ's silence on the issue leaves the Court unable to determine whether the omission was intentional and based on a determination that those conditions were not sufficiently severe, or

was perhaps more in the nature of an oversight. Therefore, the Court cannot find the ALJ's determination regarding Plaintiff's severe impairments to be supported by substantial evidence.

Furthermore, and perhaps more importantly, the ALJ did not consider these conditions and their concomitant symptoms when crafting Plaintiff's RFC.[5] *See Brockman v. Berryhill*, No. 2:16-CV-00032 JAR, 2017 WL 4339502, at *4 (E.D. Mo. Sept. 29, 2017); 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."). The only limitations the ALJ included in the RFC that seem related in any way to Plaintiff's ability to walk or stand were the restrictions to only occasionally climb ramps and stairs, to never climb ladders, ropes, or scaffolds, and only occasionally balance. There is no mention in the RFC of any other durational or functional limits on her ability to walk or stand, and no indication that the ALJ considered Plaintiff's symptoms that primarily affected her ability to walk or stand.

Accordingly, the Court cannot conclude that any error in the ALJ's failure to consider Plaintiff's knee problems and bulging disc at Step Two was harmless. This is particularly true in light of the fact that all the jobs that the ALJ determined Plaintiff could still do despite her limitations, which, as noted *supra*, included the occupations of office helper (DOT No. 239.567-010), mail clerk (DOT No. 209.687-026), and marker (DOT No. 209.587-034), require a significant amount of walking or standing. *See* 20 C.F.R. § 404.1567(b) ("[A] job is in this category when it requires a good deal of walking or standing."). The DOT descriptions of these occupations

---

[5] A claimant's RFC is "the most a claimant can do despite her limitations." *Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

11

bears this out. For example, according to the DOT, an office helper "furnishes workers with clerical supplies," "distributes incoming mail," "collects and distributes paperwork from one department to another," and "may specialize in delivering mail, messages, documents, and packages between departments." The DOT states that a mail clerk "sorts incoming mail for distribution," and "distribute[s] and collect[s] mail." The DOT explains that a marker "marks and attaches price tickets to articles of merchandise," and then packs them in boxes. The question of whether these jobs are in fact within Plaintiff's capabilities despite her limitations is not for the Court to determine at this time, but rather, is one for the ALJ to consider upon remand, and after reconsidering Plaintiff's impairments at Step Two of the sequential evaluation.

## V. CONCLUSION

For all of the foregoing reasons, the Court finds that the ALJ's determination regarding Plaintiff's severe impairments is not supported by substantial evidence on the record as a whole. On remand, the ALJ is directed to reconsider Plaintiff's severe impairments at Step Two; further develop the medical record if necessary; and then proceed through the sequential evaluation process before issuing a new decision. The Court is aware that upon remand, the ALJ's decision as to non-disability may not change after addressing the deficiencies noted herein, but the determination is one the Commissioner must make in the first instance. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (when a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings); *Leeper v. Colvin*, No. 4:13-CV-367 ACL, 2014

WL 4713280 at *11 (E.D. Mo. Sept. 22, 2014) (ALJ has duty to make disability determination). Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. § 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

                                                     SHIRLEY PADMORE MENSAH
                                                     UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of September, 2019.